UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

OLTON L. DUMAS,

Petitioner,

v.

HOYT A BRILL, Warden, and
JON E. LITSCHER,

Respondents.

Civil File No. 00-800 (DSD/AJB)

**REPORT AND RECOMMENDATION**

The above-entitled matter is before the undersigned Magistrate Judge of the District Court on Petitioner's application for a writ of habeas corpus, brought under 28 U.S.C. § 2254. Respondents have filed a motion and supporting memorandum asking the Court to dismiss the petition, (Docket Nos. 17 and 18), and Petitioner has filed various affidavits, exhibits and memoranda in support of his application for habeas corpus relief. (Docket Nos. 6, 7, 21, and 22.) The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons set forth below, the Court recommends that the petition for writ of habeas corpus be dismissed with prejudice.

## I. BACKGROUND

On September 11, 1995, Petitioner was convicted in the Circuit Court for Rock County, Wisconsin, on charges of "obstructing; carrying a concealed weapon; and drug paraphernalia." (Petition, [Docket No.1], p. (2), ¶s 1, 2 and 4.) He was sentenced to nine years in state prison, and he apparently served the first several years of his sentence in prisons that were located in Wisconsin and operated by the Wisconsin Department of

FILED AUG 28 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Corrections. Sometime near the end of 1999, however, Wisconsin prison officials decided to transfer Petitioner to the Prairie Correctional Facility, ("PCF"), in Appleton, Minnesota. He apparently arrived at PCF in late December 1999 or early January 2000.

Petitioner is one of many Wisconsin prison inmates who have been transferred to out-of-state prison facilities during the past year. Because of overcrowding in its own facilities, the Wisconsin Department of Corrections has made contractual arrangements with institutions in other states to provide housing for Wisconsin inmates. PCF, a private prison operated by the Corrections Corporation of America, ("CCA"), is one of the facilities that has agreed to accept and house Wisconsin prisoners.

A few months after arriving at PCF, Petitioner filed his present application for habeas corpus relief. He claims that the Warden at PCF, Hoyt Brill, cannot legally detain him and should be ordered to release him immediately. Although six grounds for relief are listed in the petition, the first two claims are indistinguishable from each other, and the last three claims are indistinguishable from each other. Thus, there are really only three separately identifiable claims in the petition, which are as follows:

(1) that Wisconsin violated Petitioner's federal constitutional rights by forcing him to leave that State;

(2) that Wisconsin prison officials violated Fed. R. App. P. 23(a), by transferring Petitioner when he had another habeas corpus action still pending in another court; and

(3) that the State of Minnesota has deprived Petitioner of various constitutional

rights to which he is entitled as a self-proclaimed resident of this State.[1]

For the reasons discussed below, the Court concludes that Petitioner is not entitled to habeas corpus relief on any of his current claims. It will therefore be recommended that this action be dismissed with prejudice.

## II. DISCUSSION

### A. Form Of Action

Respondents initially argue that habeas corpus relief is not available to Petitioner in this matter because he is not challenging the validity of his underlying Wisconsin state court conviction and/or sentence, nor is he is seeking relief for any "quantum changes in the level of his confinement." Respondents contend that Petitioner is challenging only the conditions of his confinement, which cannot be done in an action brought under the federal habeas corpus statutes -- 28 U.S.C. §§ 2241-2255.

It is certainly true that a civil rights action, rather than a habeas corpus action, is the prescribed federal remedy for a prisoner who is challenging the conditions of his

---

[1] It appears that Petitioner might be attempting raise some additional arguments in his brief in opposition to Respondents' motion to dismiss. (Docket No. 22.) He seems to be arguing there that (1) the State of Wisconsin has somehow attempted to enforce its criminal statutes in Minnesota, (2) the statute authorizing his transfer to PCF, (Wis.Stat. 301.21), is "unconstitutional" because the State of Wisconsin, and the individual members of the legislature who enacted the statute, have a pecuniary interest in promoting the transfer of inmates to private prison facilities, and (3) Wisconsin's inmate transfer statute (§ 301.21) is unconstitutional because it does not prescribe a method for selecting which inmates should be transferred to out-of-state institutions. These three claims, (if they are actually intended to be additional claims for relief), will not be separately addressed here, because they were not raised in the petition. Instead, they were mentioned for the first time in Petitioner's final reply brief, thereby depriving Respondents of a fair opportunity to respond to them. The Court would note, however, that all three of these claims are clearly without merit.

confinement rather than the fact or duration of his confinement. As explained by our Court of Appeals,

> "[c]laims challenging conditions of confinement or the method by which a sentence is being carried out may be asserted through a [42 U.S.C.] § 1983 cause of action. However, a state prisoner challenging the fact or duration of a sentence of imprisonment and seeking an earlier or speedier release has a federal remedy through habeas corpus and cannot bring a claim under § 1983."

Williams v. Hopkins, 130 F.3d 333, 336 (8th Cir.), cert. denied, 522 U.S. 1010 (1997) (emphasis added). Where the proper form of action -- habeas or civil rights -- is debatable, "[i]t is the substance of the relief sought which counts." Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam) (emphasis added).

In this case, the relief sought by Petitioner is an immediate release from custody. He has not requested money damages to compensate him for his allegedly wrongful transfer to PCF, nor has he requested injunctive or declaratory relief that would cause him to be returned to Wisconsin. Instead, he is challenging the very fact of his confinement, and he is seeking an expedited release from custody. Simply put, he wants the Warden at PCF to set him free immediately.[2] The federal remedy for such a request is a writ of habeas corpus. Id. ("[t]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody"). Given the type of relief that Petitioner is seeking here, the Court concludes that he has properly presented his claims by way of a habeas corpus petition, rather than a civil rights complaint.

---

[2] See Petitioner's "Memorandum Of Law In Support Of Petitioner's Motion In Opposition To Respondent's Consent For Substitution Of Respondent Request." (Docket No. 6, p. 2.)

B. Exhaustion of State Court Remedies.

Respondents further contend that if Petitioner's claims can properly be brought in a habeas corpus petition, they must be summarily dismissed because he has not exhausted his available state court remedies. See 28 U.S.C. § 2254(b)and (c); O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1731 (1999); Rose v. Lundy, 455 U.S. 509 (1982). Assuming the exhaustion requirement is applicable here,[3] and that there are state court remedies

---

[3] The Court is not fully satisfied that the exhaustion requirement is applicable here. Because Petitioner is not challenging the validity of any state court judgment, it may be most appropriate to construe his petition as one brought under 28 U.S.C. § 2241, rather than § 2254. See Montez v. McKinna, 208 F.3d 862, 864-65 (10th Cir. 2000) (describing § 2254 as the proper statutory basis for challenging the validity a state prisoner's conviction or sentence, and § 2241 as the proper statutory basis for challenging the execution of a sentence). If the instant petition is construed to be a § 2241 petition, then exhaustion of state court remedies may not be required, because § 2241 does not include an exhaustion clause comparable to § 2254(b).

In Montez, the Court held that "[a] habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254." 208 F.3d at 866. Although Montez cites three cases in support of this conclusion, none of the cited cases actually holds that exhaustion is necessary in § 2241 cases brought by state prison inmates. Two of the cases cited in Montez involved § 2254 petitions, rather than § 2241 petitions, and the third case involved a federal prisoner who was required to exhaust his federal administrative remedies – not his state court remedies.

Several courts have held that state pre-trial detainees must exhaust their state court remedies before seeking relief under § 2241. See Hirsch v. Smitley, 66 F.Supp.2d 985, 986 (E.D.Wis. 1999); Blanck v. Waukesha County, 48 F.Supp.2d 859, 860 (E.D.Wis. 1999); Moore v. DeYoung, 515 F.2d 437, 442 (3rd Cir. 1975); Neville v. Cavanagh, 611 F.2d 673, 675 (7th Cir. 1979), cert. denied, 446 U.S. 908 (1980). Those decisions, however, are based on abstention principles that would seem to apply only when a related state court case is still pending at the time when federal habeas corpus relief is sought under § 2241. Where a prisoner's § 2241 claims are wholly independent of any pending state court proceedings, (which appears to be the case here), exhaustion presumably would not be mandated by abstention principles.

The Court has found no legal authority, (aside from Montez), indicating that a state prisoner must exhaust available state court remedies before filing a § 2241 petition

available to Petitioner, the Court will not recommend that the instant petition be dismissed for non-exhaustion. The instant petition can properly be adjudicated without exhaustion pursuant to 28 U.S.C. § 2254(b)(2), which allows the Court to sidestep the exhaustion issue if Petitioner's claims will be rejected on the merits in any event.[4] Because the Court does indeed conclude that Petitioner's claims must be denied on the merits, (for reasons discussed immediately below), this case need not be -- and will not be -- dismissed for non-exhaustion.

C. The Merits of Petitioner's Claims

**(i) Forced removal from Wisconsin**

Petitioner initially argues that his transfer to a prison located in Minnesota violated his constitutional right to reside in the state of his own choosing. In an effort to support this claim, Petitioner has cited numerous court decisions which have recognized that a citizen of the United States has a constitutional right to reside in any of the fifty states of the Union. See e.g., Dunn v. Blumstein, 405 U.S. 330, 338 (1972) ("freedom to travel throughout the United States has long been recognized as a basic right under the Constitution...[;] [a]nd it is clear that the freedom to travel includes the freedom to enter and abide in any State in the Union") (citations omitted).

---

challenging only the manner in which his sentence is being executed. Thus, if this case were to be construed as a § 2241 action, (as perhaps it should be), exhaustion of state remedies might not be required.

[4] 28 U.S.C. § 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the states."

Petitioner apparently fails to appreciate, however, that because of his criminal conviction, he has been stripped of some of his constitutional rights – including his right to reside in the state of his choice. The Supreme Court made this clear in Olim v. Wakinekona, 461 U.S. 238 (1983). There the Court held that:

> "Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State. [Footnote omitted.] Often, confinement in the inmate's home State will not be possible. A person convicted of a federal crime in a State without a federal correctional facility usually will serve his sentence in another State. Overcrowding and the need to separate particular prisoners may necessitate interstate transfers. For any number of reasons, a State may lack prison facilities capable of providing appropriate correctional programs for all offenders.
>
> Statutes and interstate agreements recognize that, from time to time, it is necessary to transfer inmates to prisons in other States. On the federal level, 18 U.S.C. § 5003(a) authorizes the Attorney General to contract with a State for the transfer of a state prisoner to a federal prison, whether in that State or another. See Howe v. Smith, 452 U.S. 473... (1981). [Footnote omitted.] Title 18 U.S.C. § 4002 (1976 ed. and Supp. V) permits the Attorney General to contract with any State for the placement of a federal prisoner in state custody for up to three years. Neither statute requires that the prisoner remain in the State in which he was convicted and sentenced.
>
> On the state level, many States have statutes providing for the transfer of a state prisoner to a federal prison, e.g., Haw.Rev.Stat. § 353-18 (1976), or another State's prison, e.g., Alaska Stat.Ann. § 33.30.100 (1982). Corrections compacts between States, implemented by statutes, authorize incarceration of a prisoner of one State in another State's prison. [Citations omitted.]...
>
> In short, it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of- state prison after serving a portion of his sentence in his home State. Confinement in another State, unlike confinement in a mental institution, is 'within the normal limits or range of custody which the conviction has authorized the State to impose.' Meachum [v. Fano], 427 U.S. [215] 225, [(1976)]... [Footnote omitted.] Even

> when, as here, the transfer involves long distances and an ocean crossing, the confinement remains within constitutional limits."

Id. at 245-47 (emphasis added).

At footnote 9 of the Olim opinion, the Supreme Court added an observation that is particularly relevant to the arguments advanced by Petitioner here:

> "Respondent attempts to analogize his transfer to banishment in the English sense of "beyond the seas," arguing that banishment surely is not within the range of confinement justified by his sentence. But respondent in no sense has been banished; his conviction, not the transfer, deprived him of his right freely to inhabit the State. The fact that his confinement takes place outside Hawaii is merely a fortuitous consequence of the fact that he must be confined, not an additional element of his punishment. [Citation omitted.] Moreover, respondent has not been exiled; he remains within the United States. [¶] In essence, respondent's banishment argument simply restates his claim that a transfer from Hawaii to the mainland is different in kind from other transfers. As has been shown in the text, however, respondent's transfer was authorized by his conviction. A conviction, whether in Hawaii, Alaska, or one of the contiguous 48 States, empowers the State to confine the inmate in any penal institution in any State unless there is state law to the contrary or the reason for confining the inmate in a particular institution is itself constitutionally impermissible...."

Id. at 248, n. 9 (emphasis added).

As a result of his criminal conviction, Petitioner has temporarily lost many (though not all) of the constitutional rights enjoyed by other citizens. See Meachum v. Fano, 427 U.S. 215, 224 (1976) ("given a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution"). The Supreme Court's decision in Olim clearly confirms that, because of his conviction, Petitioner does not presently have a constitutional

right to live in a state of his choosing.[5] His first claim for relief must therefore be rejected.

Furthermore, even if Petitioner did have a constitutional right to remain in Wisconsin, he has not shown that a violation of that right would entitle him to habeas corpus relief. His transfer to Minnesota has (perhaps) affected the conditions of his confinement, but the transfer alone has not affected the validity of his confinement. If the conditions of a prisoner's confinement are found to be unconstitutional, the prisoner may be entitled to damages or some type of equitable relief, (in this case, perhaps a court order directing that Petitioner be returned to Wisconsin); but outright release from custody would not be an appropriate remedy. Thus, even if Petitioner's constitutional argument were somehow viable, he would not be entitled to a writ of habeas corpus in this case.[6]

---

[5] Incredibly, even though Petitioner's "Reply Brief" runs on for 57 pages and cites dozens of cases, it makes no mention of Olim – the one clearly dispositive U.S. Supreme Court decision.

[6] Petitioner also seems to be arguing that the State of Wisconsin somehow forfeited its authority to confine him, by causing him to be transferred to an out-of-state prison. (Reply Brief, [Docket No. 22], p. 43.) This argument might warrant greater discussion if Wisconsin had deliberately and voluntarily relinquished its authority to detain Petitioner. See e.g., Shields v. Beto, 370 F.2d 1003, 1005-06 (5th Cir. 1967) (State of Texas was barred, based on waiver, from re-asserting custody of prisoner after voluntarily surrendering him to Louisiana legal authorities and making no effort to re-establish custody until more than 28 years later). It is readily apparent, however, that Petitioner has never been released from custody by the State of Wisconsin. Although he happens to be serving his Wisconsin prison sentence outside the geographical boundaries of that state at this particular time, nothing in the record suggests that the Wisconsin Department of Corrections has relinquished its legal custody of Petitioner. See Blango v. Thornburgh, 942 F.2d 1487, 1491 (10th Cir. 1991) (District of Columbia did not waive jurisdiction over habeas petitioner by transferring him to a federal prison in Leavenworth, Kansas); Joyner v. Henman, 755 F.Supp. 982, 985 (D.Kan. 1991) ("there is no merit in petitioner's claim that the state of Pennsylvania lost all jurisdiction when it transferred him to [the U.S. Penitentiary in Leavenworth, Kansas]").

**(ii) Alleged violation of Fed. R. App. P. 23(a)**

Petitioner further argues that he is entitled to habeas corpus relief because his transfer to PCF violates Fed. R. App. P. 23(a). That Rule provides as follows:

> "Pending review of a decision in a habeas corpus proceeding commenced before a court, justice or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party."

Petitioner alleges that Respondents violated this rule by causing him to be transferred to PCF while he still had an appeal pending before the Seventh Circuit Court of Appeals in another habeas case. (Petition, p. (6), ¶ 12.C.) Respondents contend that even if Petitioner's transfer technically violated Rule 23(a), Petitioner is not entitled to habeas relief in this case, without a showing of prejudice. The Court agrees with Respondents.

"The purpose of Rule 23(a) is to prevent officials from frustrating an inmate's efforts to obtain habeas relief by physically removing him from the territorial jurisdiction of the court in which the petition is pending." Strachan v. Army Clemency and Parole Bd., 151 F.3d 1308, 1313 (10th Cir. 1998). See also Goodman v. Keohane, 663 F.2d 1044, 1047 (11th Cir. 1981) (per curiam) ("[t]he rule was designed to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief").

Transferring a prisoner outside of the jurisdiction where his habeas petition is pending does not divest the court of jurisdiction to review and decide the prisoner's petition. See Schultz v. U.S., 373 F.2d 524 (5th Cir. 1967) ("a transfer cannot divest this

court of jurisdiction to review the denial of appellant's petition"); Shabazz v. Carroll, 814 F.2d 1321, 1324 (9th Cir. 1987) (where prisoner transfer occurs in violation of Rule 23(a), Court of Appeals retains jurisdiction over the appeal), cert. denied, 487 U.S. 1207 (1988). See also Weeks v. Wyrick, 638 F.2d 690, 692-93 (8th Cir. 1981) (per curiam) ("[o]nce the custodian is properly served, subsequent transfer of the petitioner does not cause a loss of habeas corpus jurisdiction in the original district"); McCoy v. U.S. Board of Parole, 537 F.2d 962, 966 (8th Cir. 1976) (same). Such a transfer, however, could subvert the final judgment of the habeas court if a writ were granted, because there could be some doubt as to the enforceability of the writ outside of the court's jurisdiction. This means that a violation of Rule 23(a) is consequential only where habeas relief is granted by the court in which the prisoner's pre-transfer petition was pending. If that court concludes the prisoner is not entitled to habeas relief, then the prisoner has not been prejudiced by the transfer, and any Rule 23(a) violation is inconsequential. As explained in Goodman: "Since the transfer of petitioner has not prevented this court from retaining jurisdiction of this appeal and reviewing the district court's dismissal of his habeas petition, and since we hold that he is not otherwise entitled to habeas relief, petitioner can claim no prejudice entitling him to a writ of habeas corpus." 663 F.2d at 1047. See also Hammer v. Meachum, 691 F.2d 958, 961 (10th Cir. 1982) (habeas petitioner not entitled to any relief, despite "blatant violation" of Rule 23(a), because he had not been "prejudiced by the transfer"), cert. denied, 460 U.S. 1042 (1983); Olds v. Brill, No. 98-2768 (8th Cir. 2000), 2000 WL 58499 (unpublished opinion) (appellant's prison transfer, allegedly in violation of Rule 23(a), did not entitle him to habeas relief).

Thus, Respondents' prejudice argument is correct; Petitioner is not entitled to relief based on a Rule 23(a) violation without showing that he was prejudiced. More specifically, Petitioner would have to show that the Seventh Circuit has granted habeas relief in his pending appeal, and that such relief cannot be effected by reason of his transfer to PCF in violation of Rule 23(a). Petitioner's transfer to PCF, without more, does not entitle him to a writ of habeas corpus in this action – even if his transfer did not comply with Rule 23(a). Because Petitioner has not shown prejudice resulting from his transfer -- namely that a Seventh Circuit judgment in his favor has been rendered unenforceable – his current claim based on Rule 23(a) must be denied.

**(iii) Alleged violation of Petitioner's rights as a Minnesota citizen**

In Petitioner's final set of claims, (grounds 4, 5 and 6 of the petition), he declares that he is now a citizen of Minnesota, and he contends that he is entitled to habeas corpus relief because the State of Minnesota has violated his federal constitutional rights. He specifically argues that Minnesota has violated his right to equal protection, and has subjected him to double jeopardy, by causing him to be incarcerated, even though he has not violated the laws of this State. This argument is clearly flawed.

Regardless of whether Petitioner can effectively declare himself to be a Minnesota resident, he cannot show that the State of Minnesota has treated him improperly, illegally or unconstitutionally. Minnesota did not convict or sentence Petitioner, Minnesota did not cause him to be transferred to PCF, and Minnesota is not currently incarcerating him. Simply put, the State of Minnesota has not done anything to Petitioner.

More specifically, the State of Minnesota has not deprived Petitioner of equal protection or subjected him to double jeopardy. Petitioner claims that he should be treated like other Minnesota citizens who have not violated Minnesota laws; i.e., he should be free, rather than incarcerated. This argument conveniently overlooks the fact that Petitioner, unlike the free Minnesota citizens to whom he compares himself, has been sentenced to prison by a court of competent jurisdiction and has not yet finished serving his sentence.[7] Because Petitioner is not "similarly situated" to the unimprisoned residents of this state, his equal protection claim must be rejected. See Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994) (to sustain an equal protection claim, plaintiff must allege and prove that he belongs to a group that has been treated less favorably than others who are similarly situated), cert. denied, 513 U.S. 1185 (1995). Petitioner's double jeopardy claim fails because he has not shown that the State of Minnesota has ever tried him, convicted him or sentenced him for any offense. Thus, Petitioner's contention that the State of Minnesota has somehow subjected him to an "additional penalty" is patently frivolous.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Respondents' motion to dismiss Petitioner's application for habeas corpus relief,

[7] If Petitioner's equal protection argument were accepted, then presumably inmates confined in Minnesota's federal prisons could also declare themselves to be residents of this state, and then insist upon being immediately released from custody because they -- like Minnesota's unimprisoned citizens -- have not been convicted of any violation of the state criminal code.

(Docket No. 17), be GRANTED; and

2. This action be DISMISSED WITH PREJUDICE.

Dated: August 28th, 2000

ARTHUR J. BOYLAN
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this report and recommendation by filing with the Clerk of Court and serving all parties, within ten days after being served with a copy thereof, written objections which specifically identify the portions of the proposed findings, recommendations or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief with ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.